# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO R. DIAZ, | Case No. 1:15-cv-00914 DLB PC |
| Plaintiff, | FIRST SCREENING ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983 |
| v. | |
| DR. METTS, et al., | |
| Defendants. | |

## I.     Screening Requirement and Standard

Plaintiff Fernando R. Diaz, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 17, 2015. He consented to the jurisdiction of the Magistrate Judge on July 10, 2015.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**II.     Discussion**

  **A.     Plaintiff's Allegations**

Plaintiff was incarcerated at California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, at the time the events giving rise to this action occurred. Plaintiff brings this action against the following Defendants: Medical Doctor Julius M. Metts; Registered Nurse ("RN") Michelle Kipp; RN Teresa Arden; RN P. Standifer; and RN E. Dysinski.

Plaintiff alleges as follows. On March 18, 2014, Plaintiff was assessed by Defendant Kipp for numbness in his right leg and severe pain in his lower right back stemming from an injury he had sustained playing baseball two weeks prior. Plaintiff rated his pain a 10 on a scale of 0-10 with 10 being the most excruciating pain possible and 0 being no pain at all. Defendant Kipp stated Plaintiff did not appear to be in that much pain. She completed a medical referral labeling it "routine" and rated the pain a 6-7 out of 10. Plaintiff complains the document was false and

1  should have stated "urgent."

2  On March 28, 2014, Plaintiff saw Defendant Metts for his injury. Plaintiff explained that his back pain was beginning to worsen, that he couldn't stand up straight, and that he needed a wheelchair because it hurt too much to walk. Defendant Metts examined him with negative results. Defendant Metts stated it was probably a "flare-up." Defendant Metts stated the planned course of treatment would be Ibuprofen and an X-Ray. Plaintiff asked for an MRI or CT scan and a wheelchair but his requests were denied. He was sent back to his cell with assistance from inmates.

9  On April 7, 2014, an X-Ray was performed on his lumbar spine. He still complained of numbness and weakness in his right leg and severe pain in his lower right side of his back. His complaints were ignored and he was sent back to his cell.

12  On April 19, 2014, Plaintiff submitted a CDCR 7361 Healthcare Service Request Form complaining of severe pain in his back and right buttock radiating down his leg to his feet with numbness in his leg and foot.

15  On April 30, 2014, Plaintiff was examined by Defendant Dysinski. Plaintiff advised Dysinski that he had been suffering from a severe back injury for the past two months and that he was experiencing throbbing and tingling pain in his right buttock and down his right leg. He rated his pain a 10 out of 10 and explained he was in extreme pain and needed immediate medical treatment. He stated he could not stand up straight or walk because of the pain. He was sent back to his cell with no treatment.

21  On May 4, 2014, Plaintiff passed out in his cell from the pain.

22  On May 9, 2014, Plaintiff had been scheduled to see Defendant Metts but he was not seen due to healthcare staff.

24  On May 13, 2014, he submitted another Healthcare Service Request Form requesting immediate treatment. He explained he was supposed to see a doctor on May 9, 2014, but he was not called. He stated he was unable to sleep except on his left side and that he was developing bed sores on his left hip. He reported numbness in his leg and feet and requested an emergency MRI. He also wrote that he needed a wheelchair to go to medical.

On May 14, 2014, Plaintiff was assessed by Nurse Carlson. He advised that he had passed out in his cell 10 days prior due to severe pain. Carlson gave him instructions on stretching exercises and wrote a referral labeled "urgent." He was referred to physician A. Triggs Brown. Plaintiff complained of his back pain and stated his spine was pressing on his nerves. Plaintiff was advised that the plan of care was Tylenol and stretching exercises. He was returned to his cell and his request for a wheelchair was denied.

On May 21, 2014, Plaintiff was examined by Dr. Metts. A physical examination was conducted with negative results. Plaintiff stated he was in excruciating pain and could not walk or sleep, even on his left side, due to the pressure on his spine. He stated he now had to sleep in a sitting position on his left buttock. He requested a referral to an outside hospital and a wheelchair but his requests were denied and he was sent back to his cell.

On May 24, 2014, Plaintiff was seen by Defendant Standifer for complaints of constipation. He could not pass a bowel movement due to the pain in his back. Standifer cut Plaintiff off and stated she didn't care about all that, but that her chief concern was his constipation. Standifer explained that to the extent he wanted help for his back, he would need to fill out a healthcare request for his back.

On May 26, 2014, medical was contacted to respond to a "man down" situation in Plaintiff's cell. Plaintiff's pain was so severe he had to be taken out of his cell on a stretcher and was then taken to "TTA" via emergency vehicle. Once in TTA he reported burning and numbness along the right side of his lower back running down his right leg. He rated his pain a 10 out of 10. He was given an injection for the pain, and he demanded an MRI or CT scan to see what was wrong with his back. He refused to leave until he received the MRI or CT scan. This was reported to the custody sergeant who threatened that if he did not return to his housing unit he would be dragged off the bed and placed in administrative segregation. Plaintiff apologized for being argumentative and stated he just wanted help and needed to go to a hospital. His requests were denied and he was sent back to his cell.

On May 27, 2014, Plaintiff was examined by Defendant Kipp for a follow-up appointment of his constipation. According to the complaint, Plaintiff states he informed Defendant that

everything was fine.  Yet, he reported that he was still in tormenting pain and was having trouble functioning with normal activities such as getting to and from the toilet.  He reported that he was unable to leave his cell and rated his pain a 10 out of 10.  Defendant Kipp then contacted Defendant Metts for further examination who subsequently sent Plaintiff to TTA for a further evaluation.  He was seen by the RN on duty who documented that he was bent over due to increased pain.  Plaintiff was given another injection and X-Ray, but his requests for MRI were denied.

On May 28, 2014, Plaintiff was seen by the lab where blood was drawn.  Plaintiff advised the nurse that he was in pain and felt like he was going to pass out.  He was sent back to his cell despite his request to see a doctor.

On May 29, 2014, Plaintiff was seen by Defendant Metts to review his X-Ray results.  The lumbar X-Ray revealed mild disc space narrowing at L5-S1 and it was determined the overall test results were negative.  Plaintiff continued to complain of his back pain and that it was constant during the day and night.  He was afraid he was going to be paralyzed.  His requests for wheelchair, MRI, CT scan and hospital were denied and he was sent back to his cell.

On May 31, 2014, Plaintiff was taken to TTA for complaints of abdominal pain and for lower back pain.  He was seen by Defendant Arden who had to call in a doctor since it was Saturday and there were no doctors at the prison.  Plaintiff told Defendant Arden that he was in so much pain he felt as though he was going to pass out.  Defendant Arden stated, "Aren't you the one that has been coming in for your back pain? I don't think your back pain is that bad.  You're probably just trying to get pills, huh?"  Plaintiff stated to the nurse that he never gets any help.  Plaintiff was then given a muscle relaxer and a 7-day prescription of Tylenol.

On June 2, 2014, he submitted another healthcare service request form informing staff that he had been to medical on numerous occasions, he had seen a lot of doctors, and none had given him a proper diagnosis.  Each one said one thing or another.  He stated his condition was getting worse and he was starting to feel abdominal pain and couldn't sleep on his back, stomach or sides.  He requested medical attention.

On June 3, 2014, Plaintiff was seen by Defendant Kipp for the healthcare service form.  He

informed Kipp that none of the pain medications were working and that the injection only works for a few hours. He stated his pain was so severe at times he would have to ask his cellmate to assist him to the commode. Defendant Kipp stated he was lying about his pain because he was too young to have back problems and was only trying to get medication to get high. She then asked Plaintiff if he was on drugs. Plaintiff became very hostile and very accusatory, telling Defendant Kipp he never gets any help from anybody. He apologized for his behavior. Kipp then told Plaintiff to stand up from his wheelchair. Plaintiff stated he couldn't because it hurt too much to stand. Defendant Kipp asked if he couldn't stand because he didn't want to or because he didn't like the numb feeling in his legs. Defendant Kipp then reported this to Defendant Metts who then entered the room and examined Plaintiff. Metts advised Plaintiff that all of the X-Rays were negative and there wasn't much he could do besides give him another injection and change his medication to Nortriptyline. Plaintiff told Metts he'd already been placed on that medication and that it didn't work for the pain. Metts then prescribed Naproxen instead to be taken twice a day for 60 days. Plaintiff stated he wouldn't make it that long and that he needed to be seen by an outside hospital. He stated his condition was deteriorating and he was afraid he would be disabled. Defendant Metts said he would discuss the case with the Chief Medical Officer ("CMO") but Plaintiff needed to take the Naproxen for 60 days before the CMO would consider Plaintiff for an MRI. Plaintiff was discharged and issued a walker.

On June 3, 2014, Plaintiff submitted a CDCR 22 Inmate Request for Interview form with the CMO and the Chief Medical Executive ("CME") informing them of his condition and requesting they intervene in his medical situation. The forms were returned stating the forms were custody forms and Plaintiff needed to use the proper healthcare forms for medical requests.

On June 4, 2014, nursing staff were called to respond to an emergency "man down" situation. Plaintiff was located on the floor of his cell complaining of severe pain to his back and groin. He reported a pain level of 10 out of 10. He was transported by stretcher and emergency vehicle to TTA where he was assessed by RN Giwa who then presented Plaintiff to Dr. Scharffenberg. Scharffenberg determined Plaintiff required a higher level of care for his abdominal pain.

On June 4, 2014, Plaintiff arrived at Mercy Hospital in Bakersfield. He was seen and examined by Dr. Palmisano. He explained his complaints and the information was passed on to Dr. Mushtaq who ordered an MRI for his back and a CT scan for his stomach.

On June 5, 2014, Dr. Wahba, a spine surgeon, reviewed the MRI results which showed he had a large right disc extrusion at his L5-S1. Dr. Wahba determined surgical intervention was necessary due to the severity of the injury. Plaintiff was diagnosed with a right L5-S1 disc herniation which was pressing on his spinal nerves which in turn caused the pain. Plaintiff was scheduled for surgery the following day.

Plaintiff complains that he was denied adequate medical care. He seeks compensatory damages in the amount of 1.25 million dollars plus punitive damages in the amount of 98 thousand dollars.

### B. Eighth Amendment Claim

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) ), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

The Court assumes that Plaintiff's back injury satisfies the objective element of an Eighth Amendment. *Wilhelm*, 680 F.3d at 1122; *Lopez*, 203 F.3d at 1131.

Plaintiff's allegations, however, do not suffice to satisfy the subjective element. *Wilhelm*, 680 F.3d at 1122. Plaintiff complains that Defendant Metts acted indifferently to his back pain and failed to properly diagnose his back injury by failing to obtain an MRI or CT scan. However, there is no indication that Defendant Metts acted in conscious disregard of his back injury. Plaintiff allegedly saw Defendant Metts on five occasions for his back pain. On March 28, 2014, Defendant Metts examined him for the first time. He diagnosed the back pain as a possible "flare-up." He commenced his planned course of treatment of Ibuprofen, and he ordered an X-Ray that provided negative results. On May 21, 2014, he presented to Defendant Metts with complaints of back pain. Defendant Metts physically examined him but found nothing beyond what he had previously diagnosed. On May 27, 2014, Defendant Metts saw Plaintiff after Defendant Kipp contacted him concerning his back pain. Defendant Metts examined Plaintiff again. He referred Plaintiff to TTA where he was further evaluated and given an injection and additional X-Rays. On May 29, 2014, Plaintiff was seen by Defendant Metts again. At this time, Defendant Metts reviewed the X-Rays and noted mild disc space narrowing at L5-S1. Overall, however, the tests proved negative, and Plaintiff was returned to his cell. On June 3, 2014, Defendant Metts examined Plaintiff after we was referred to him by Defendant Kipp. Defendant Metts conducted an examination with negative results. He advised Plaintiff that all of the X-Ray results proved negative and there wasn't much he could do aside from giving him another pain injection and changing his pain medication. Defendant Metts then gave Plaintiff a new prescription for Naproxen and stated he would further discuss the case with the CMO. In light of the above, it appears that Plaintiff was consistently treated by Defendant Metts. Defendant Metts never refused treatment. Plaintiff complains that he should have done further tests such as an MRI or CT scan which would have revealed the injury; however, this is insufficient to state a claim under the Eighth Amendment. Plaintiff contests Defendant Metts' various diagnoses, but "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [section] 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted); *accord Snow v. McDaniel*, 681 F.3d 978, 987-88 (9th Cir. 2012); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 (9th Cir. 2012). Plaintiff complains that Metts'

diagnosis was ultimately wrong, but plaintiff "must show that the course of treatment the doctor[] chose was medically unacceptable under the circumstances . . . and . . . that [he] chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted); *accord Snow*, 681 F.3d at 987-88.  At most, Plaintiff's allegations against Defendant Metts amount to negligence, and negligence does not amount to deliberate indifference. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Snow*, 681 F.3d at 987-88.

As to Defendant Kipp, Plaintiff saw her on three occasions.  On March 18, 2014, Defendant Kipp examined Plaintiff.  While Plaintiff complained that his pain was a 10 out of 10, with 10 being the most excruciating pain imaginable, Defendant Kipp judged Plaintiff's pain level to be approximately a 6 or 7 in that it appeared to her that Plaintiff was not in so much pain as to merit a 10 rating.  She further made a medical referral labeling it a "routine" back problem, rather than "urgent."  Plaintiff contests her findings but again, a difference of opinion between a patient and a medical provider does not give rise to a § 1983 claim. *Franklin*, 662 F.2d at 1344.  Plaintiff was re-examined by Defendant Kipp on May 27, 2014, for his complaints of constipation.  When Plaintiff complained further of his back pain, Defendant Kipp referred him to Defendant Metts for further evaluation.  Likewise on June 3, 2014, Defendant Kipp examined Plaintiff and referred Plaintiff to Metts for further evaluation.  Plaintiff complains that Defendant Kipp stated she did not believe his complaints of pain, but this does not change the fact that Kipp treated Plaintiff and referred Plaintiff to Metts for more treatment.  There is no indication that Defendant Kipp failed to treat Plaintiff or otherwise acted in conscious disregard to an excessive risk to his safety.

The same analysis applies to Defendants Arden, Standifer and Dysinski.  They each examined Plaintiff on a single occasion.  In each instance, the defendants physically examined Plaintiff.  In some cases, additional pain medication such as Tylenol or a muscle relaxer was ordered; in other cases, no additional treatment was ordered apart from the current course of treatment.  Plaintiff complains that Defendant Arden made remarks about believing his back pain was contrived in order to obtain drugs, but Defendant Arden still treated Plaintiff and provided him with medication.

9

In sum, Plaintiff fails to state a claim under the Eighth Amendment against any defendant. It appears Plaintiff was consistently treated for his back pain and was examined on every occasion he presented to Defendants. Plaintiff complains that they misdiagnosed his back issue, but as stated above, this amounts at most to negligence, which does not present a claim under the Eighth Amendment. *Hearns*, 413 F.3d at 1040; *Snow*, 681 F.3d at 987-88. Plaintiff will be given an opportunity to file an amended complaint.

### III.   Conclusion and Order

For the reasons set forth above, Plaintiff's complaint fails to state any cognizable claims under section 1983. Plaintiff has not previously been provided with notice of the deficiencies in his claims and the Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the theory of mere *respondeat superior*, *Iqbal*, 556 U.S. at 676-77; *Starr*, 652 F.3d at 1205-07. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, *Lacey*, 693 F.3d at 907 n.1, and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1.   Plaintiff's complaint is dismissed, with leave to amend, for failure to state any claims;

2.   The Clerk's Office shall send Plaintiff a civil rights complaint form;

1     3.      Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint, not to exceed twenty-five (25) pages, excluding exhibits; and

      4.      If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **May 17, 2016**                           **/s/ Sandra M. Snyder**
                                                    UNITED STATES MAGISTRATE JUDGE